# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

                  Plaintiff,

    -vs-                                                                       **Case No. 04-CR-29**
                                                                                  **11-C-1032**

**DAVID M. LARSEN,**

                  Movant.

# DECISION AND ORDER

"David Larsen brutally beat Teri Jendusa-Nicolai, his ex-wife, at his home in Wisconsin. He then bound her with duct tape, stuffed her in a garbage can filled with snow, put the can in the back of his truck, and drove to a self-storage facility in Illinois. He left her there—still bound and in the snow-filled garbage can—in an unheated rented storage locker. She was discovered the next day, about an hour from death." *United States v. Larsen*, 615 F.3d 780, 781 (7th Cir. 2010).

Larsen was charged in state and federal court, with the state charges resolving first. After a bench trial in federal court, Larsen was convicted of kidnapping and interstate domestic violence and sentenced to life imprisonment. These convictions were affirmed on appeal. Larsen now moves for relief under 28 U.S.C. § 2255. Larsen lists fifteen grounds for relief in his motion. None of them have merit.

■ **Denial of Right to Counsel of Choice (Ground One)**

Larsen argues that the seizure of his assets in state court forced him to accept representation of the public defender in federal court. According to Larsen, these assets were seized without due process, but Larsen cannot collaterally challenge that procedure here in federal court. If he had any claims to raise in connection with the proceedings against him in state court, he could and should have raised them there.

Larsen also alleges that there are "ineffective assistance of counsel" aspects to this violation because his public defender – Attorney Dean Strang – was aware of the seizure and the ongoing deprivations that existed. One element of the Sixth Amendment right to counsel is "the right of a defendant who *does not require appointed counsel* to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (emphasis added). Larsen cannot dispute that he required appointed counsel. In turn, Larsen cannot argue that Attorney Strang's failure to raise the issue was deficient performance because, regardless of how or why, Larsen could not afford counsel. The federal public defender's office was powerless to change that fact.

■ **Inadequate Factual Basis for Miscarriage (Ground Two)**

Larsen argues that there was insufficient evidence that Jendusa-Nicolai had been pregnant or that Larsen's conduct had caused a miscarriage to support the upward departure in sentencing. The Seventh Circuit rejected this argument on appeal. *Larsen*, 615 F.3d at 789 ("both Jendusa-Nicolai and her husband testified to the pregnancy and her miscarriage, and the district judge was entitled to credit their testimony"). There are no changed

circumstances which would justify re-litigating this claim in a § 2255 motion. *Varela v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances").

Larsen also argues that his attorney was ineffective for failing to challenge the factual basis for the miscarriage. Here, Larsen parrots many of the arguments raised in his post-sentencing motion under Fed. R. Crim. P. 35(a), in which Attorney Strang speculates that his own "failure to challenge the factual underpinnings of the Court's upward variance well may have been constitutionally deficient performance." Case No. 04-CR-29, ECF No. 138 at 14. The Court disagrees with this assessment. As Strang himself acknowledges, he had no notice that the Court would impose an upward variance based solely on the miscarriage. Therefore, the failure to attack the factual basis for the miscarriage was a strategic decision, entitled to deference after-the-fact. "After all, it is 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The decision to concede the factual basis for the miscarriage in favor of focusing on other arguments was not objectively unreasonable. *Smith*, 565 F.3d at 352 (citing *Strickland*, 466 U.S. at 687-88).

- **Fifth Amendment, *Miranda* Violations (Grounds Three, Four and Six)**

Larsen claims that he was not *Mirandized* after being taken into custody for questioning by the Wheeling, Illinois police department, and that the police officers' custodial interrogation techniques generally violated his right against self-incrimination.

-3-

These arguments were not raised on appeal, so they are procedurally defaulted. *Prewitt v. Unites States*, 83 F.3d 812, 816 (7th Cir. 1996). They are without merit, in any event, for the reasons explained by Magistrate Judge Callahan in his Recommendation and Order on Larsen's pretrial motions, adopted by the Court *in toto*. ECF No. 50, at 69-78 (Custodial Statements in Violation of Fifth Amendment; Involuntary Statements).

- **Illegal Searches and Seizures (Grounds Five, Ten, Eleven and Twelve)**

In grounds ten and twelve, Larsen argues that evidence from the second of the two warrantless searches of his home should have been suppressed because the search failed to meet the requirements of the exigent circumstances exception, lacked probable cause, and was overly broad. The Seventh Circuit rejected these arguments on direct appeal. *Larsen*, 615 F.3d at 788-89. They cannot be re-litigated here. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("courts . . . forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal.").

Grounds five and eleven are procedurally defaulted because they were not raised on appeal, and they are also without merit. In ground five, Larsen argues that certain personal items were unlawfully seized. This argument was rejected by Judge Callahan in his pretrial recommendation, *see* pp. 78-97. In ground eleven, Larsen argues that evidence from the first warrantless search of his home should have been suppressed because police lacked probable cause to believe any emergency required forcible entry into the home. However, Larsen expressly conceded the validity of this search before Judge Callahan. Recommendation at 59.

-4-

- **Double Jeopardy (Ground Seven)**

Larsen argues that federal prosecutors violated the Petite Policy in pursuing Larsen's conviction and sentence. The Petite Policy is an internal policy of the Department of Justice establishing uniform guidelines for dual and successive federal prosecutions. *Rinaldi v. United States*, 434 U.S. 22, 25 n.5 (1977); *Petite v. United States,* 361 U.S. 529 (1960). The policy essentially forbids dual federal and state prosecutions unless a compelling federal interest exists. *United States v. Heidecke,* 900 F.2d 1155, 1157 n.2 (7th Cir.1990). A United States attorney must receive permission from the appropriate Assistant Attorney General before conducting a dual prosecution. *Id.* The Petite Policy, however, provides defendants with no substantive rights. *United States v. Fletcher,* 634 F.3d 395, 405-07 (7th Cir. 2011) (citing *United States v. Mitchell,* 778 F.2d 1271, 1276-77 (7th Cir. 1985)). Thus, even if Larsen showed a violation of the Petite Policy, it would not merit vacating his conviction or sentence. *United States v. Schwartz*, 787 F.2d 257, 267 (7th Cir. 1986) (citing *Mitchell*, 778 F.2d at 1276-77).

To the extent that Larsen raises a constitutional double jeopardy claim, it was raised and rejected on direct appeal, so he cannot re-litigate it here. *Larsen*, 615 F.3d. at 786-88.

- **Extradition (Ground Eight)**

Larsen argues that he was unlawfully moved from Illinois to Wisconsin without the proper extradition procedures under Wisconsin state law. State law claims cannot be raised in a § 2255 motion. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Reed v. Clark*, 984 F.2d

209, 210 (7th Cir. 1993). However, reading this claim broadly, Larsen may be resting his claim on the uniform Interstate Agreement on Detainers ("IAD") that has been codified in Wisconsin's statutes. Wis. Stat. § 916.05. Though the IAD is state law, it is also considered federal law. *Reed v. Farley*, 512 U.S. 339, 347 (1994). The IAD likely does not apply to Larsen's case because he was not convicted or imprisoned in Illinois before his removal to Wisconsin. *United States v. Roy*, 830 F.2d 628, 632-33 (7th Cir. 1987) (approving cases holding that the IAD is inapplicable to pre-trial detainees). Even if the IAD applied, Larsen could not obtain relief therefrom because the illegality of an arrest or detention does not deprive the court of jurisdiction, bar subsequent prosecution, or void the ultimate conviction. *Crews v. United States*, 445 U.S. 463, 474 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

- **Competence to Stand Trial (Ground Nine)**

Larsen argues that dissociative amnesia concerning the events surrounding Jendusa-Nicolai's abduction rendered him incompetent to stand trial and prevented him from assisting his attorney in presenting his defense. The issue of Larsen's competence was fully explored before trial, ECF Nos. 81-84, but Larsen did not raise the issue on appeal, so it is forfeited.

- **Failure to Investigate (Grounds Thirteen and Fourteen)**

In Grounds Thirteen and Fourteen, Larsen complains that his counsel did not investigate or argue a self-defense theory of the case. However, Larsen's beating Jendusa-Nicolai, abducting her, and leaving her to die long after she posed any possible imminent

-6-

threat to him rendered pursuit of a self-defense theory pointless. *United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998). Because the argument is clearly a losing one, Larsen suffered no prejudice from his counsel's failure to raise it.

- **Speedy Trial (Ground Fifteen)**

Larsen did not raise a speedy trial issue on appeal, so as a substantive claim, it is procedurally defaulted. In the context of ineffective assistance of counsel, this claim fares no better. The Court presumes that foregoing the speedy trial arguments was a valid trial strategy, and not without reason. First, counsel may have concluded that any dismissal for such violations would be without prejudice, only resulting in another indictment and later trial. *See* 18 U.S.C. § 3162(a)(2) (providing courts the discretion to dismiss indictments for Speedy Trial Act violations with or without prejudice); *United States v. Taylor*, 487 U.S. 326, 335 (1988) (holding that the Act favors neither remedy over the other); *United States v. Dessesaure*, 556 F.3d 83, 85 (1st Cir. 2009) (noting the rarity of dismissal with prejudice for speedy trial violations). Second, counsel may have determined that no violation occurred, and that pursuing the issue would not be worth the hassle. Larsen provides nothing to dissuade the Court from finding this course of action strategically valid and easily within the bounds of prevailing professional norms. Therefore, deciding to not raise any alleged speedy trial violation was not deficient.

-7-

Case 2:11-cv-01032-RTR   Filed 02/14/13   Page 7 of 8   Document 16

■ **Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA shall issue only if the movant can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003). This standard requires the movant to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473 (2000)). If an issue is decided on procedural grounds, rather than the merits, a COA should issue only if reasonable jurists would debate whether the motion states a valid claim of the denial of a constitutional right *and* whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 485. None of Larsen's claims, substantive or otherwise, merit the issuance of a COA.

**IT IS HEREBY ORDERED THAT** Larsen's motion to vacate, set aside or correct his sentence [ECF No. 1] is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of February, 2013.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**